UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**ENTERED**

JUN 0 5 2008

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | |
|---|---|
| MARGARET R. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-1637-DFH-JMS |
| ) | |
| STATE OF INDIANA TEACHERS' ) | |
| RETIREMENT FUND ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION TO DISMISS

Plaintiff Margaret Turner worked for the State of Indiana Teachers' Retirement Fund, which terminated her employment. Turner alleges that her termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Indiana common law. The defendant Fund has moved to dismiss the case, arguing that the claim under the ADA is barred by the Eleventh Amendment of the United States Constitution. The court finds as a matter of law that the Indiana State Teachers' Retirement Fund is an arm of the State so that the Eleventh Amendment bars Turner's suit under the ADA, so Turner's ADA claim must be dismissed. The court declines to exercise supplemental jurisdiction over the remaining state law claim.

*Standard of Review*

Notwithstanding some earlier statements to the contrary by many courts, it is now reasonably clear that the Eleventh Amendment does not actually defeat subject matter jurisdiction in the federal courts. The Supreme Court has denied having reached a firm conclusion on the subject, see *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 391 (1998) ("a question we have not decided"), but the Court has treated the defense as one that may be waived by, for example, removing a case from state court to federal court. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 619-20 (2002); see also *Higgins v. Mississippi*, 217 F.3d 951, 953-54 (7th Cir. 2000) (State's failure to raise Eleventh Amendment could be treated as waiver, though court could raise issue on its own). Thus, the Eleventh Amendment may support dismissal on the merits for failure to state a claim upon which relief can be granted. *E.g., Berry v. Ivy Tech State College*, 2003 WL 1563862, at *2 (S.D. Ind. Jan. 15, 2003).

In ruling on the Fund's motion to dismiss under Rule 12(b)(6), the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005). The Supreme Court recently summarized a plaintiff's pleading obligations in the context of an antitrust claim: "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). A plaintiff must "raise a right to relief above the speculative level," *id.* at 1965, by pleading "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.

*Discussion*

I.  *Immunity Under Eleventh Amendment*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has extended the Amendment beyond its language to provide immunity for an unconsenting State from suits brought in federal courts by citizens of that same State. *E.g.*, *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); accord, *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991) ("we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty").

Three exceptions exist to the general rule that the Eleventh Amendment bars actions in federal court against a State, State agency, or State officials acting in their official capacities. First, the State or State agency may waive immunity by consenting to suit in federal court. *E.g.*, *Lapides*, 535 U.S. at 620 (removal to federal court waives the immunity). Second, Congress can abrogate the State'sor State agency's immunity through a valid exercise of its own constitutional powers, most often under the Fourteenth Amendment. *E.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (holding that Eleventh Amendment does not bar application of Title VII of Civil Rights Act of 1964 to state employers: "we think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, see *Hans v. Louisiana*, 134 U.S. 1 (1890), are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment"). Third, under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a plaintiff may file suit against State officials in their official capacity seeking equitable relief from ongoing violations of federal law. *E.g.*, *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997).

Indiana has not waived its immunity with regard to suits brought under the ADA in federal court. The Indiana Teachers' Retirement Fund has also not waived its immunity here. Congress tried to abrogate States' immunity under the Eleventh Amendment from suits under the ADA, see 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction

for a violation of this chapter"), but the Supreme Court held that Congress lacked the power to do so. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 360 (2000). Turner does not seek equitable relief for ongoing violations of federal law. Thus, none of the exceptions to the Eleventh Amendment's bar against actions against a State in federal court applies.

The Eleventh Amendment protects only the State and its agencies, however, and not its political subdivisions. *Kashani v. Purdue University*, 813 F.2d 843, 845 (7th Cir. 1987) (holding that State university was entitled to Eleventh Amendment immunity). The issue here is whether the Indiana State Teachers' Retirement Fund should be treated as an arm of the State itself, so the plaintiff's claims should be dismissed based on the Eleventh Amendment. The Seventh Circuit has looked to two basic criteria to decide whether an entity is an arm of the State: the extent of the entity's financial autonomy from the State and the general legal status of the entity. *Id.* at 845-47.

At the risk of simplifying a fairly complex institution, the court summarizes the Fund's status and then digs into the relevant details. The Indiana Constitution imposes on the Indiana General Assembly the duty "to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to

all." Ind. Const. art. VIII, § 1. In carrying out this duty, the General Assembly decided in 1921 to centralize at the State level the provisions for funding and administering retirement benefits for public school teachers. 1921 Ind. Acts 126-131, amending 1915 Ind. Acts 658-73. Indiana law establishes the Teachers' Retirement Fund "to be used to pay benefits to teachers and to supervisors of teachers in the public schools after specified years of service and under other specified circumstances." Ind. Code § 5-10.4-2-1. The fund is governed by a board of six trustees. Five are appointed by the governor; the sixth is the state budget director, who is also appointed by the governor. Ind. Code § 5-10.4-3-1.

The Fund receives contributions from individual employers and from employees, as well as returns on its assets. Its assets measure in the billions, $7.8 billion as of June 30, 2006. Indiana State Teachers' Retirement Fund Annual Report, at 2 (2006), *available at* www.in.gov/trf/2330.htm (last visited June 4, 2008). As of the same date, however, the Fund reported unfunded liabilities of nearly $9.7 billion. *Id.* Under Indiana law: "The general assembly shall appropriate an amount from the state general fund that is sufficient to cover the state's actuarial liability for each member covered by the pre-1996 account and for each state employee covered by the 1996 account." Ind. Code § 5-10.4-2-4(a).

A.      *Financial Autonomy*

The entity's degree of financial autonomy from the State is the most important factor in determining if the entity is an arm of the State. *Kashani*, 813 F.2d at 845. The factors the court must consider to determine the extent of the entity's financial autonomy from the State include the extent of State funding, the State's oversight and control of the entity's fiscal affairs, the entity's ability independently to raise funds, whether the State taxes the entity, and whether a judgment against the entity would result in the State increasing its appropriations to the entity. *Id.*

The Indiana General Assembly allocates funds to the Teachers' Retirement Fund on an annual basis. The General Assembly appropriated to the Fund $568,372,000 from the State's general funds for fiscal year 2007-08 and $602,474,320 for fiscal year 2008-09, in addition to millions more from other dedicated funds. 2007-2009 As-Passed Budget, Operating Budget for Education at 14-15, *available at* http://www.in.gov/sba/files/ap_2007_c_7_5_educ_data.pdf (last visited June 4, 2008). These appropriations from the State's general fund obviously constitute significant State funding.

The Fund is subject to extensive financial oversight by the State. The Fund's board is required to submit a report on the Fund with a complete operating and financial statement every year to the governor, the pension management

-7-

oversight commission (appointed by legislative leaders, see Ind. Code § 2-5-12-3), and the state budget committee (the budget director and four legislative leaders, see Ind. Code § 4-12-1-3). Ind. Code § 5-10.4-3-6(b)(15). The Teachers' Retirement Fund is also subject to Indiana's Budget Agency Act, which requires the Fund's board of directors to file a detailed statement of all of its expenditures for the last budgetary period and any expenditures it expects to find necessary in the upcoming budgetary period. Ind. Code §§ 4-12-1-2(d), -7, -8. The Budget Agency analyzes the statements and submits recommendations to the legislature with regard to how much money should be appropriated to the Fund. See *Kashani*, 813 F.2d at 845-46 (finding the State's oversight of Purdue University based on the Budget Agency Act a factor that weighed in favor of the entity being an arm of the State); *DeHarder Investment Corp. v. Indiana Housing Finance Authority*, 909 F. Supp. 606, 611 & n.3 (S.D. Ind. 1995) (holding that authority was not protected by Eleventh Amendment; fact that entity was not subject to Budget Agency Act indicated that the State's oversight of the entity's fiscal affairs was narrow).

The board of directors of the Teachers' Retirement Fund manages the day-to-day affairs of the Fund. For example, the board of directors has the power to invest funds and to purchase and manage real estate. Ind. Code § 5-10.4-3-10. The board can sue or be sued in its own name. Ind. Code § 5-10.4-3-8(a)(4). The board has the authority to "Exercise all powers necessary, convenient, or

appropriate to carry out and effectuate the board's public and corporate purposes and to conduct the board's business." Ind. Code § 5-10.4-3-8(a)(12). Critically, however, the State bears ultimate responsibility for maintaining sufficient money in the Fund to cover the State's liability to all of its members. Ind. Code § 5-10.4-2-4. Thus, a judgment against the fund could theoretically lead to an increase in appropriations to the Fund by the State (even though any individual case is highly unlikely to have such an effect). See *Peirick v. Indiana University-Purdue University Indianapolis Athletics Department*, 510 F.3d 681, 696 (7th Cir. 2007) (stating that the state's careful allocation of funds to the entity meant that a judgment against the entity would affect the state treasury). This obligation to appropriate State money for the Fund contrasts sharply with the various entities authorized to incur debts that may not create financial obligations for the State (in light of the Indiana Constitution's prohibition against the State government itself incurring most forms of debt, see Indiana Const. art. X, § 5). See, *e.g.*, *DeHarder Investment Corp.*, 909 F. Supp. at 612 (housing finance authority not entitled to immunity); *Moss v. Calumet Paving Co.*, 201 F. Supp. 426, 429-30 (S.D. Ind. 1962) (toll road commission not entitled to immunity); see also *Shisler v. State Lottery Comm'n of Indiana*, 2008 WL 1884061 (S.D. Ind. Apr. 25, 2008) (lottery commission not entitled to immunity); *Burrus v. State Lottery Comm'n of Indiana*, 2008 WL 111004 (S.D. Ind. Jan. 7, 2008) (same).

B.   *General Legal Status*

The second factor the court must consider is the general legal status of the entity. This inquiry encompasses factors such as the statutory definition of the entity, the selection of the members of the governing body, the entity's powers, and whether the entity serves the State as a whole or only a region. *Kashani*, 813 F.2d at 847.

The general statute establishing the scope and purpose of the Public Employees' Retirement Fund and the separate Teachers' Retirement Fund provides that each fund "is an independent body corporate and politic" and is "not a department or agency of the State but is an independent instrumentality exercising essential governmental functions." Ind. Code § 5-10.2-2-1(b). See *DeHarder Investment Corp.*, 909 F. Supp. at 612 (holding that legal status of entity that the Indiana Code defined as a "public body corporate and politic of the state" was that of a separate corporate entity which was an instrumentality or agency of the state but not the state in its sovereign corporate capacity), citing *Steup v. Indiana Housing Finance Authority*, 402 N.E.2d 1215, 1218 (Ind. 1980).

On the other hand, the Budget Agency Act lists the Teachers' Retirement Fund as falling within the definition of the term "agency of the state." Ind. Code § 4-12-1-2(d). This type of inconsistency among statutory provisions is not uncommon, of course, because the statutes are designed to address a host of

issues other than the Eleventh Amendment. In Indiana, the constitutional limits on State debt have produced an extensive body of law concerning the authority of a separate or "independent body corporate and politic" to incur debt as an entity distinct from the State. See generally *Steup*, 402 N.E.2d at 1218 (collecting cases on entities authorized to issue debt). Of course, the public universities or their boards of trustees are also separate bodies corporate and politic,[1] and they are all treated as State agencies protected by the Eleventh Amendment. See *Peirick*, 510 F.3d at 695 (collecting cases). Accordingly, the Seventh Circuit has taught courts to look to substance over form when evaluating the entity's general legal status. *Peirick*, 510 F.3d at 696; *Kashani*, 813 F.2d at 847.

The governor of Indiana appoints five of the six members of the Teachers' Retirement Fund's board of directors. Ind. Code § 5-10.4-3-1. The sixth member is the director of the Budget Agency or his/her designee, and the governor appoints the director. *Id.* Each member of the board serves for a term of up to four years. Ind. Code § 5-10.4-3-2. As discussed above, the board possesses many powers that indicate some independence from the State. However, this independence is undercut by the fact that all of the members of the board are selected by the governor and serve for a maximum of four years. *Kashani*, 813 F.2d at 847. These characteristics lead to the conclusion that "the functions

---

[1] Ind. Code §§ 21-20-2-2 (Indiana University), 21-23-2-1 (Purdue University), 21-19-2-3 (Ball State University), 21-21-2-2 (Indiana State University), 21-24-2-1 (University of Southern Indiana), 21-25-2-2 (Vincennes University).

granted the board appear less like the independent powers of a city or county than like the authority delegated to an instrumentality of the state to spare the legislature the need to ratify its every action." *Id.* Finally, the Teachers' Retirement Fund serves the entire State, not merely one region.

In summary, the financial autonomy factor weighs heavily in favor of treating the Teachers' Retirement Fund as an arm of the State. The Indiana General Assembly provides significant funding to the entity annually and maintains close financial oversight. The State is obligated to appropriate money to make up shortfalls in the Fund's assets. Ind. Code § 5-10.4-2-4(a). Though the Fund has some attributes of an independent legal entity, it has more of the attributes of a State entity. Thus, the Teachers' Retirement Fund is an arm of the State for the purpose of the Eleventh Amendment and is immune from suit under the ADA in federal court. Turner's claim under the ADA must be dismissed for failure to state a claim upon which relief can be granted. Because the Eleventh Amendment problem could not be overcome by amending the complaint, the dismissal must be with prejudice. See, *e.g.*, *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (court may deny leave to amend where amendment would be futile).

II.   *State Law Claim*

In addition to her claim under the ADA, Turner has asserted a vague claim under Indiana common law. The only basis of federal jurisdiction over this claim is federal supplemental jurisdiction under 28 U.S.C. § 1367, which allows a federal court to decide state law claims outside federal diversity jurisdiction if they are so closely related to the federal claims as to be considered part of the same case. A federal court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

When all federal claims have been dismissed, the district court should ordinarily relinquish jurisdiction over the supplemental state law claims rather than resolve them on the merits. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001); *Wright v. Associated Insurance Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The factors that determine whether supplemental jurisdiction is appropriate – judicial economy, convenience, fairness, and comity – will usually weigh in favor of dismissal at this stage. *Wright*, 29 F.3d at 1251. Nothing about this case counsels against application of the usual rule. The court will relinquish jurisdiction over the state law claim and dismiss it without prejudice. Final judgment shall be entered accordingly.

So ordered.

Date: June 5, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Betsy M. Isenberg
INDIANA STATE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov,Jeffrey.Hunt@atg.in.gov,Annika.Brown@atg.in.gov

Juliana B. Pierce
INDIANA STATE ATTORNEY GENERAL
Julie.Pierce@atg.in.gov,Valerie.Stark@atg.in.gov,Troyellen.Daniels@atg.in.gov

Michael T. Wallace
ROBERTS & BISHOP
mwallace@roberts-bishop.com